Gaston, Judge,
 

 after stating the case as above, proceeded as follows: Many serious charges made in the bill, have been completely abandoned. There is no
 
 dispute, but
 
 that the conduct of the defendant, in the arrangement he made for buying at the sales, was prompted by honest motives, and resulted in a real benefit to the estate, under his care. It is also admitted, that
 
 the
 
 compromise made with Fawcett, was a highly advantageous one for the estate. He thereby obtained more than a reimbursement of the principal and interest of the capital invested by Whitted, when it is proved that the concern did a losing business, and sunk a part of the capital. The important matter in controversy is, whether the defendant is not liable, in whole or in part, for the uncollected balance of the decree against Dickey. This question is'
 
 *447
 
 raised in different forms upon the second, fifth and sixth of the exceptions taken by the plaintiffs to the report.
 

 The plaintiffs insist, in the first place, that here is a clear loss sustained by the estate, by reason of the culpable negligence and misplaced confidence of the defendant. Joseph Dickey was a man of slender me’ans, and proved himself incapable, or unfaithful, in settling the affairs of that part of the mercantile concern wherewith he was charged. The defendant took no measures to bring him to an account as managing partner, until two years after the expiration of the partnership, and after he had left the State, so as to be beyond the reach of the process of our Courts. And it is therefore just, that this loss should fall on the negligent trustee, and not upop his innocent
 
 cestuy que trusts.
 
 In examining this charge, it is proper to bear in mind, the perfect integrity and zeal for the interest of those whom he represented, which have generatly marked the conduct off the defendant, in the execution of his trust. His efforts to save the estate from loss, in the sales made by the surviving partners, and which actually resulted in loss to himself, are evidences of this zeal. It is in proof too, that throughout the whole of his administration, he habitually consulted with, and acted under, the counsel of the best friend of the family, and a friend characterized by great sagacity. We can have scarcely then a reason to doubt, but that the defendant meant to discharge his duty faithfully — and that if he erred, it was an error of judgment. Was it a culpable error? Dickey had enjoyed so fully the confidence of his testator, as not only to be taken into partnership, but to be entrusted with the
 
 sole
 
 management of the affairs of the firm that were to be conducted out of the county. All the evidence concurs in establishing that he was a young man of fair character.— He was, the one selected both by Webb and the elder Mr. Whitted, to unite with the,defendant, in the plan of defensive operations against Fawcett. The goods were sold on a credit, which expired 1st Jannary, 1818. Between the day of sale, and the time when Dickey went away, which was in the summer or fall of that same year, he did not remain inactive — paying no attention to the winding up of the af
 
 *448
 
 fairs under his charge. We cannot ascertain, with certain-the amount; but from the statements accompanying the report, in the suit against him, during that,period, nearly $3,000 appear to have passed through him to the present defen^ant> towards the discharge of the demands against the firm. Not a single witness has testified that there was any suspicion entertained of his integrity, up to this time. What ground had the executor then for filing a bill against him? If he had filed a bill, what pretence could he have alleged— and the allegation should be on oath — for appointing a receiver, and depriving Dickey of his legal rights, as a surviving and managing partner. We acquit the defendant of this charge of culpable neglect.
 

 It is next insisted, that the money collected from Dickey, ought to be applied to the satisfaction of the second decree made against him, and that the defendant is personally liable for the $1,728:96 cents, first decreed against Dickey. In support of this proposition, it is said that Dickey and the defendant were joint purchasers at Fawcett’s sale, to the amount of $1,490:48 cents; that this sum with interest from the first of January, 1818, to the date of the decree, amounted to $1,728:96 cents; and that the transfer and assignment to the executors of a debt, personally due from one of the executors, is so much assets of the estate in his hands.— Admitting the correctness of the argument, we yet see that, in the account, the
 
 defendant is charged with this sum.
 
 He is debited for the amount received on compromise with Fawcett, $2,443:96 cents, which includes the transfer of this claim as
 
 so much cash,
 
 $1,728:96 cents, and the cash actually paid by Fawcett, §715. The estate, therefore, is actually credited, and the defendant debited, with this sum. The obscurity and perplexity attending the investigation of this case, seem mainly to arise from what appears to us an error against Dickey, in the first decree charging Dickey with the amount of those purchases. It appears clearly, from the exhibits therein, that Dickey, in his transactions with the present defendant, had fully accounted for what he personally owed for those purchases, as well as for the purchases made at his own sale, and was somewhat in advance beside. Properly,
 
 *449
 
 therefore, is the defendant charged in
 
 this
 
 account for both these purchases — the former $1,728:96 cts., and the latter $1,105:16 cents. But why should Dickey have been charged in th,e former suit with the amount of the purchases at Fawcett’s sale as an existing debt transferred from Fawcett to Whitted’s executors? It was in truth extinguished, and the sum with which Dickey ought to have been charged, was the balance, whatever it might be, due from him as managing partner of Joseph Dickey & Co. to Whitted’s executors, for advances made by them to discharge the debts of Joseph Dickey & Co., above the payments which they had received from him. What was this balance does not distinctly appear; but it is manifest that it fell short of the amount thus improperly debited to Dickey. It is quite apparent that this is not the only error injurious to Dickey to be found in the proceedings against him. In the account on which the se-cbnd decree is founded, the amount of debts due Joseph Dickey & Co., is set down as “taken from the list of balances” at $6,654:47 cents; whereas, it will be seen from the exhibit in the cause, that the amount of debts in that list of balances is $6,359:37 cents; that to
 
 this
 
 was to be added $137:-60 cts., because of balances overlooked, making the amount $6,496:97 cents, and $20 cash, which would raise the whole to $6,516:97 — but the commissioner, by mistake, added the $137:60 cts. and the $20, not to the $6,359:37 cents, but to the $6,496:97 cents — thus in effect charging him with $137:-60 ceuts
 
 twice.
 
 Moreover, in that account Dickey is charged in account with Whitted’s executors with the full amount of capital put in by their testator in goods, and with interest thereon, and $527:54 cts. their testator’s share of profits. Now, there cannot be a question, upon Fawcett’s testimony, that the business was a
 
 losing one,
 
 and that upon a fair settlement with Dickey, Whitted’s estate would not have received the
 
 'principal
 
 advanced, much less principal, interest and profits. Fawcett declares that the compromise which he made with respect to. the claim against himself was, speaking in a business sense, “ the worst act of his life,” whereby he sunk from $500 to $1,000 — that the share of capital advanced by Mr. Whitted was in old goods, and at a time when the
 
 *450
 
 pnce of goods was rapidly declining, and continued to de-c^ne ont^ a^er ^1’" Whitted’s death — 'that the branch of the concern under his management had a large number of bad .debts. — and that he verily believes the business of Joseph Dickey & Co. was also a losing business, both from his knowledge of it at the time of Whitted’s death, and from the enquiries made by him about it afterwards. It may be remarked, that it was probable that Fawcett would take care to be well informed on the subject, as he was a partner in the concern, and entitled to a share in the profits thereof, if, in truth, profits had been made. Nor is it strange that in taking an account of the dealings of a partnership against the managing partner, without the attendance of himself or any agent on his behalf, in the presence of those whose duty it was to press against him every claim apparently well founded, and in the absence oí all vouchers for his discharge, the most conscientious commissioner should report an amount due much beyond the truth — as we hold was unquestionably the case in that suit. The loss which the plaintiffs complain of, by reason of a large part of the decree against Dickey remaining unpaid, is more apparent than real. Indeed, we greatly doubt, if a bill had been filed before Dickey went away, and the accounts of both branches of the co-partnership had been accurately taken, whether Mr. Whitted’s estate would have had a decree against both the surviving partners for as much as has been actually realised for the estate from them.,
 

 It was also objected by the plaintiffs, in relation to this part of the case, that the defendant had acted culpably in discharging Fawcett, by the compromise, from liability to contribution, because of Dickey’s defalcation. We think this objection ’unfounded. It is admitted on all hands that the compromise was one highly advantageous to the estate; and the estate must take it with its inconveniences' as well as its benefits.
 

 The Court therefore overrules the 2d, 5th, and 6th exceptions of the plaintiffs.
 

 The first exception is also overruled; for it seems to us that the commissioner, by reporting that the account A, an
 
 *451
 
 nexe.d to the defendant’s answer, is correct, adopted that as
 
 his
 
 account.
 

 The Court allows the third exception in part, that is to say, as to the sum of $14, with which it holds that the defendant has been improperly credited for personal services. The residue of the exception is overruled. The defendant is entitled to charge for actual .expenditures incurred in' the faithful discharge of his duty. The Court holds those of attending the sales and employing Watts to have Dickey arrested, to be expenditures of that character. Some of the items on which commissions have been calculated, are not indeed the proper subjects of a commission; but the Court will not disturb the report on that account; for the commissioner hath reported the
 
 whole
 
 sum allowed for commissions to be reasonable; and excluding from the account every item not properly the subject of a commission, the gross amount allowed will not exceed 5 per.
 
 cent,
 
 on one side of the account.
 

 The 4th exception is also overruled. There is satisfactory evidence that the demands paid off against the concern of Joseph Dickey & Co., were
 
 bona fide
 
 demands, existing at the death of Mr. Whitted. In the exhibits of the former equity suit, it will be seen that Fawcett and Dickey, upon the death of Whitted, inventoried the debts due to, and those owing from, their concerns respectively. In that of Dickey’s these are found. Besides, in regard to every one of them, there is particular evidence either conclusive
 
 per se,
 
 or corroboratory of that furnished by the inventory. It is seldom, indeed, that such old transactions can be proved as clearly as these have been. But, it is objected that it does not appear that they have been paid by the present defendant; and furthermore, that in the account on which the last decree against Dickey was founded,
 
 he
 
 is credited with the amount of these demands as having been paid by him. This last observation is founded on a misapprehension of the account to which it refers. To enable the commissioner to ascertain what was due from Dickey as the managing partner of the firm of Joseph Dickey & Co., it was necessary to take the accounts of the firm; and in doing this, he is charg-
 
 *452
 
 efi with all its effects, and is credited with áll its debts, whether Pa^ or t0 Pai^- The exhibition. of the vouchers of payment by the defendant is
 
 prima facie
 
 evidence that he hiade the payment. The decision in
 
 Finch
 
 v. Ragland, 2 Dev. Eq. Rep. 142, thafthe production of the testator’s notes by an executor, does not establish payment by the executor, applies where it does not appear that
 
 these
 
 were unsatifiedat the testator’s death. But, in truth, it is of little moment to the plaintiffs by whom, whether by Dickey or by the defendants, these demands -were paid. They were charges upon the assets; and the plaintiffs are entitled only to the clear residue of these assets, after payment of the charges upon them.
 

 The defendant has filed one exception for that the commissioner has not allowed a commission also on the disbursements. The Court overrules that exception, because it is satisfied with the
 
 amount
 
 allowed as a compensation for defendant’s services.
 

 The account returned will be modified according to this opinion, and a decree rendered for the plaintiffs for the balance that will be then due. The costs of taking the account are to be paid equally by the parties — and as to the other costs, the parties will respectively pay their own. The commissioner is allowed $25 for his report.
 

 Per Curiam. Decree accordingly.